# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **LARK SHIPPING S.A.** | § | |
| | § | |
| **v.** | § | **C.A. NO. _____** |
| | § | **IN ADMIRALTY, Rule 9(h)** |
| **AJUBESTEEL CO., LTD.** *in personam,* | § | |
| **and 2,076 METRIC TONS OF CASING,** | § | |
| *in rem* | § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

Plaintiff, Lark Shipping S.A., ("Lark Shipping" or "Plaintiff"), appearing through undersigned counsel and for its Verified Complaint against Ajubesteel Co., Ltd. ("Ajubesteel"), *in personam*, and 2,076 Metric Tons of Casing (the "Cargo"), *in rem*, alleges as follows:

1.  This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.  Jurisdiction is proper under 28 U.S.C. § 1333, as hereinafter more fully set forth.  Venue is proper in this Court because the Cargo is presently located within the Southern District of Texas.

2.  At all material times to this action, Lark Shipping, was and still is a corporation or other business entity organized and existing under the laws of a foreign country, and was and is the registered owner of the M/V MAGNUM FORTUNE (the "MAGNUM FORTUNE").

3.  At all material times to this action, Ajubesteel was and is a foreign corporation or other business entity organized and existing under the laws of a foreign country, with its principal offices located in South Korea.

4.  At all material times to this action, the Cargo was and is a consignment of approximately 2,076.425 metric tons of casing loaded onboard the MAGNUM FORTUNE in Pohang, Republic

of Korea, and thereafter carried to Houston, Texas.  Upon its arrival in Houston, Texas, the Cargo was discharged to a facility in this District controlled by Lark Shipping, where it remains located as of the filing of this Verified Complaint.

5.      On or about January 12, 2015 Lark Shipping, as owner/operator of the MAGNUM FORTUNE, entered into a Government Form charter party with Daebo International Shipping Co., Ltd. whereby Lark Shipping agreed to charter the MAGNUM FORTUNE to Daebo for a period of about 65 days (without guarantee).  As is customary, the charter agreement was memorialized in (1) a fixture recap, (2) a *pro forma* charter party, and (3) rider clauses, which together constitute and are hereinafter collectively referred to as the "MAGNUM FORTUNE Charter Party."  *See* M/V MAGNUM FORTUNE Fixture Recap, attached as Exhibit A (the "Fixture Recap"); Pro Forma Government Form Charter Party, attached as Exhibit B ("Government Form Charter Party"); M/V MAGNUM FORTUNE Rider Clauses, attached as Exhibit C ("Rider Clauses").

6.      Clause 18 of the MAGNUM FORTUNE Charter Party grants to Lark Shipping "a lien upon all cargoes, and all sub-freights and sub-hires due to Time Charterers under any Sub-Charter party … for any amounts due under this Charter." *See* MAGNUM FORTUNE Charter Party, Cl. 18; specifically, Exhibit B, p. 3, lines 110 - 113.

7.      Prior to or after entering into the MAGNUM FORTUNE Charter Party, Daebo entered into a contract of affreightment or other agreement with Ajubesteel whereby Daebo, as charterer of the MAGNUM FORTUNE, agreed to transport Ajubesteel's cargo of casing and tubing, including but not limited to the Cargo identified in the bills of lading attached hereto as Exhibit D, from Pohang to Houston onboard the MAGNUM FORTUNE.

2461717-1

8.     On or about January 23 through February 10, 2015, Ajubesteel loaded the Cargo onboard the MAGNUM FORTUNE for shipment from Pohang to Houston. The MAGNUM FORTUNE, as the carrying vessel, accepted and loaded the Cargo pursuant to the MAGNUM FORTUNE Charter Party.

9.     Upon the completion of loading of the Cargo, Daebo issued purported Bills of Lading Nos. DISQPHHT5000400 and DISQPHHT5000600 (*see* Exhibit D), which purport to be the bills of lading for the Cargo. Such bills were issued without authority, are not in compliance with the Mates' Receipts (as required under the MAGNUM FORTUNE Charter Party), misrepresent the Cargo's loading date as pre-dating the MAGNUM FORTUNE's arrival in Pohang by nearly one month, and bear numerous other errors and/or misrepresentations. As such, these purported bills of lading are invalid, and are referred to herein and attached hereto solely for purposes of identifying the Cargo.

10.    On or about February 12, 2015, and April 17, 2015, Lark Shipping provided actual notice to Ajubesteel of its lien upon the Cargo and all sub-freights and sub-hires due to Daebo.

11.    On or about March 27, 2015, Daebo wrongfully and without cause withdrew from the MAGNUM FORTUNE Charter Party, forcing Lark Shipping to assume and perform Daebo's responsibilities as charterer through the completion of the MAGNUM FORTUNE's voyage. As a result, Lark Shipping incurred costs and expenses relating to the prosecution of the voyage and the care and custody of the cargo totaling, at present, approximately $1,288,648.94. All such costs and expenses were and are due to Lark Shipping under the MAGNUM FORTUNE Charter Party, and are therefore subject to Lark Shipping's aforementioned lien.

12.    In addition to the foregoing, since its wrongful withdrawal from the MAGNUM FORTUNE Charter Party, Daebo has failed to pay charter hire of approximately $462,641.40,

3

which amount is due to Lark Shipping for the completion of the MAGNUM FORTUNE's voyage.

13.     Accordingly, Lark Shipping is presently due $1,751,290.34 under the MAGNUM FORTUNE Charter Party.

## IN REM PROCEEDING FOR ARREST OF CARGO UNDER RULE C

14.     Lark Shipping, by this reference, incorporates all foregoing allegations as if repeated herein *in extenso.*

15.     Pursuant to general maritime law and the terms of the MAGNUM FORTUNE Charter Party, Lark Shipping possesses a lien on the Cargo for the full amount due under the charter party.

16.     Lark Shipping seeks to execute its possessory maritime lien pursuant to Rule C of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

## RULE B ALLEGATIONS

17.     Lark Shipping is informed and believes that none of the officers of Ajubesteel are now within the Southern District of Texas, that Ajubesteel does not maintain an office within this District, that Ajubesteel is not incorporated or registered to do business in the State of Texas, that Ajubesteel has no agent for the receipt of service of process in Texas, and that Ajubesteel cannot be found within this District for purposes of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

18.     Lark Shipping is informed and believes that Ajubesteel does now or will during the pendency of this action have certain goods and chattels, or credits and effects within the Southern District of Texas.   Specifically, Lark Shipping is informed and believes that

4

Ajubesteel's assets within this District consist of the casing cargo identified in Exhibit D of Plaintiff's Verified Complaint.

19.     The Property may be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and sold to satisfy the claims herein.

20.     Lark Shipping is not seeking the attachment for the purpose of injuring or harassing the defendant.

21.     Lark Shipping will be prejudiced in its recovery against Ajubesteel absent process of maritime attachment.

22.     Lark Shipping seeks an order from this Court directing the Clerk of Court to issue a Process of Maritime Attachment, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, attaching *inter alia*, not only the Property described herein, but also any other assets belonging to Ajubesteel which may be found in this District for the purposes of obtaining personal jurisdiction over the defendant as well as to secure Lark Shipping's claims.

23.     Lark Shipping agrees to hold harmless and indemnify the U.S. Marshal and all of his deputies from any and all liability as a result of attaching the aforesaid property, specifically the property identified in Exhibit D of Plaintiff's Verified Complaint.

## **QUANTUM MERUIT**

24.     Lark Shipping, by this reference, incorporates all foregoing allegations as if repeated herein *in extenso.*

25.     As the owner of the MAGNUM FORTUNE, Lark shipping incurred considerable costs and expenses relating to the care and delivery of the Ajubesteel's cargo, including the

5

Cargo, to Houston, Texas. As a matter of maritime law and equity, Lark Shipping is entitled to be reimbursed by *in personam* defendant Ajubesteel for the reasonable value of the services which it has supplied to care for and deliver Ajubesteel's cargo, including the Cargo, to Houston.

26.     Ajubesteel is liable to Lark Shipping under *quantum meruit* for its pro rata share of the reasonable value of services rendered by Lark Shipping in the completion of the MAGNUM FORTUNE's voyage. Further, a contract implied in-law was formed between Lark Shipping and Ajubesteel obligating Ajubesteel to pay Lark Shipping the reasonable value of services rendered by Lark Shipping for Ajubesteel's benefit.

## UNJUST ENRICHMENT

27.     Lark Shipping, by this reference, incorporates all foregoing allegations as if repeated herein *in extenso.*

28.     Ajubesteel has benefited from Larks Shipping's transportation and delivery of Ajubesteel's cargo, including the Cargo onboard the MAGNUM FORTUNE. It would be unjust to allow defendants to receive the benefits of delivery of their cargo to Houston, without any requirement to pay the costs associated with those services. Accordingly, Ajubesteel is liable to Lark Shipping for the benefit of receiving Ajubesteel's cargo, including the Cargo, in Houston.

**WHEREFORE**, Plaintiff, Lark Shipping, prays:

1.     That this Verified Complaint be deemed good and sufficient;

2.     That process in due form of law according to the practice of this Honorable Court issue against Ajubesteel, citing it to appear and answer this Verified Complaint;

3.     That this Court enter judgment against Ajubesteel for the amount of Lark Shipping's damages, together with interest, costs, and attorneys' fees;

4.     That pursuant to Supplemental Rule C of the Federal Rules of Procedure, a

2461717-1

warrant for the arrest of the 2,076.425 metric tons of Cargo be issued, and that all persons claiming any interest therein may be cited to appear and answer this matter;

     5.     That process in due form of law in accordance with Rule B of the Supplemental Rules for Admiralty and Maritime Claims and in the form of a Process of Maritime Attachment be issued and levied against all property of Defendant within the District up to the amount of $1,751,290.34, plus interest, costs of suit, and attorney's fees; and

     6.     That Lark Shipping be granted all further relief as justice and equity may permit.

Respectfully submitted,

*/s/ Dimitri P. Georgantas*
Dimitri P. Georgantas
Attorney-in-Charge
Texas State Bar No. 07805100
Federal I.D. No. 2805
Eugene W. Barr
Texas State Bar No. 24059425
Federal I.D. No. 1144784
801 Travis Street, Suite 1910
Houston, Texas 77002
(713) 546-9800 Telephone
(713) 546-9806 Facsimile

ATTORNEYS FOR PLAINTIFF
LARK SHIPPING S.A.

OF COUNSEL:
CHAFFE McCALL, L.L.P.

7

2461717-1